1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,          )
                                   )
                                   )
              Plaintiff,           )          2:06-cr-00100-RCJ-RJJ
                                   )
                                   )          REPORT &   RECOMMENDATION
vs.                                )             OF UNITED STATES
                                   )            MAGISTRATE JUDGE
                                   )          _____
MAYNARD MARTIN RICHARDS,           )            (Defendant's Motion to Dismiss
                                   )             Indictment (#38))
                                   )
              Defendants.          )
_____   )

17    This matter came before the Court on Defendant's Motion to Dismiss Indictment (#38).  The

18  Court has considered the Defendant's Motion (#55), the Government's Opposition (#45), and the

19  Defendant's Reply (#51).

20                                    **BACKGROUND**

21    On March 22, 2006, a federal grand jury returned an Indictment (#1) charging Defendant

22  Maynard Martin Richards with one count of wire fraud and one count of deprivation of honest

23  services, in violation of 18 U.S.C. §§ 1343, 1346, and 2.

24    The Indictment (#1) alleges that Richards "devised, planned, executed, and attempted to

25  execute, a scheme and artifice to deprive and defraud the citizens of Nye County, Nevada, of the

26  intangible right to the honest services of their elected public officials." This alleged scheme involved

27  Richards, Candice Trummell, a duly elected Commissioner of Nye County and a government

28  "cooperating witness." and others "known and unknown."

1    The State of Nevada and Nye County, authorize the operation of brothels or houses of

2  prostitution within Nye County. Nye County is governed by the Nye County Commission

3  (Commission), consisting of five elected public officials whose duties include regulating businesses

4  in the county, including brothels, through the promulgation of ordinances and the issuance of

5  business licenses.  In Nye County, a "300 yard rule" exists that  restricts the issuance of licenses and

6  the operation of brothels if the business is "within three hundred yards of any public street, road or

7  highway."  Nye County Ordinance 9.20.130 (2002).

8    It is alleged that Richards is engaged in the business of operating brothels in Nye County and

9  has licenses to operate as many as three brothels.  Further, the Indictment (#1) alleges that Richards

10  owned land in Nye County located at the corner of Homestead Road and Silver Street, described as

11  Lot 8, Block 24, Calvada Unit 14, Pahrump, Nevada (Calvada 14 Property).  Richards, allegedly,

12  planned on building and operating a brothel on the Calvada 14 Property but was prohibited due to

13  the "300 yard rule." To overcome this obstacle, it is alleged, that Richards "knowingly and

14  intentionally devised, attempted to devise, executed, and attempted to execute, a fraudulent scheme

15  to cause the County Commission to enact a revision to the Ordinance in such a way as to allow him

16  to build a brothel on the Calvada 14 Property and to otherwise benefit his business interests."

17    The purpose of the alleged scheme was to:"defraud and deprive the citizens of Nye County

18  of the honest services of their public officials;" "to obtain money, property and business advantages

19  the would enrich defendant Richards;" "to conceal the true nature, scope and purpose of the scheme

20  through a planned pattern of deceit, deception, and dishonesty;" and "to conceal the  true identities

21  of any participants in the scheme and their relationships with defendant Richards, or the scheme,

22  through a planned pattern of deceit, deception, and dishonesty."

23    It is alleged that  the scheme to defraud occurred in the following manner.  Richards formed

24  a scheme with known and unknown persons to meet with  Nye County Commissioner Candice

25  Trummell on several occasions to persuade her to use her influence and position of public trust to

26  help Richards revise the "300 yard rule" by removing any restrictions that impeded him from

27  building and operating a brothel on his Calvada 14 Property.  If and when the new ordinance was

28  revised, it would be advanced to the Commission for a vote, and Trummell would use her influence

1    to have the Commission vote in favor of the newly revised ordinance.  In an attempt to corruptly

2    influence Trummell to use her position of public trust, Richards paid Trummell on three separate

3    occasions, consisting of: $1,000 paid in cash; $4,000 paid in the form of a check; and$5,000 paid

4    under the guise of a "Memorandum of Scholarship."  All three of these payments were made  for the

5    purpose of "influencing . . . Trummell in a corrupt fashion and in order to induce and influence her

6    to use her position of public trust and her public office to revise the ["300 yard rule"] . . .and to

7    advance the revised and corrupted Ordinance to the full Commission for a vote."

8         Lastly, the Indictment (#1) alleges that Richards and "others known and unknown . . . aided

9    and abetted by each other, did, for the purpose of executing the material scheme and artifice to

10   defraud . . . knowingly transmit, and cause to be transmitted, by means of wire communication in

11   interstate and foreign commerce, certain writing, signs, signals, or sounds."  Count one alleges a

12   communication by telephone on November 10, 2005, between Trummell, in Washington, D.C., and

13   Richards in Nye County, Nevada.  Count two alleges a communication on December 13, 2005, by

14   Electronic Mail (email) containing the revised "300 yard rule" ordinance from an unidentified Nye

15   County Commissioner to Trummell.  The alleged email traveled by wired communication from Nye

16   County, Nevada to Wendover, Utah, to Dulles, Virginia, and back to Nye County, Nevada.

17        Richards argues that the Indictment (#1) should be dismissed because: (I) it  fails to inform

18   Richards of the nature and cause of the accusations contained therein; (II) it fails to state a criminal

19   offense by not stating a substantive or inchoate wire fraud violation under 18 U.S.C. §§ 1343, 1346,

20   and 2; and (III) 18 U.S.C. §§ 1343, 1346, and 2 are unconstitutionally vague and over-broad as

21   applied to this case.

22                              **DISCUSSION**

23   **I. SUFFICIENCY OF THE INDICTMENT**

24        The Sixth Amendment provides, in pertinent part, that: "the accused shall . . . be informed

25   of the nature and cause of the accusation."  U.S. CONST. amend.VI.  Federal Rule of Criminal

26   Procedure 7(c)(1) provides that an "indictment . . . must be a plain concise, and definite written

27   statement of the essential facts constituting the offense charged ."  The indictment "should be read

28   in its entirety, construed according to common sense, and interpreted to include facts which are

1   necessarily implied." United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1985) (citations omitted).

2   The Supreme Court holds that an indictment "is sufficient if: (1) it contains the elements of the

3   offense charged and fairly informs a defendant of the charge against which he must defend; and (2)

4   it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

5   Hamling v. United States, 418 U.S. 87, 117 (1974); see United States v. Hill, 279 F.3d 731, 741 (9th

6   Cir. 2002).  "Further, the test of sufficiency of the indictment is not whether it could have been

7   framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."

8   United States v. Hinton, 222 F.3d 664, 672 (9th Cir. 2000).

9       **1.  18 U.S.C. §§ 1343 and 1346**

10      In the present matter, the Indictment (#1) alleges that Richards violated 18 U.S.C. §§ 1343

11  and 1346.  Section 1343 provides, in pertinent part, that:

12
13          [w]hoever, having devised or intending to devise any scheme or
            artifice to defraud, or for obtaining money or property by means of
            false or fraudulent pretenses, representations, or promises, transmits
14          or causes to be transmitted by means of wire, radio, or television
            communication in interstate or foreign commerce, any writings, signs,
15          signals, pictures, or sounds for the purpose of executing such scheme
            or artifice, shall be fined under this title or imprisoned not more than
16          20 years, or both.

17  18 U.S.C. § 1343.  Moreover, the term "scheme or artifice to defraud" "includes a scheme or artifice

18  to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.  To be charged with

19  wire and honest services fraud, an indictment must allege that: (1) a person devised or intended to

20  devise a scheme or artifice to defraud by means of false or fraudulent pretenses, representations, or

21  promises; (2) a person must transmit or cause the scheme to be transmitted by means of wire

22  communication in interstate commerce; and  (3) the transmission must be in form of any writing,

23  sign, signal, picture, or sound for the purpose of executing the scheme or artifice.  18 U.S.C. § 1343.

24      The Indictment (#1) alleges that Richards and others intentionally "devised a scheme and

25  artifice to deprive and defraud the citizens of Nye County."  The scheme consisted of Richards and

26  others unlawfully influencing the Commission into enacting a revision to the "300 yard rule" which

27  would allow Richards to build a brothel on his Calvada 14 Property; thereby, depriving the citizens

28  of Nye County its right to honest services of its county commissioner.  Since the test is not whether

the indictment must be framed in the most satisfactory manner, but must conform to the minimal constitutional standard, the Indictment (#1) fairly informs Richards that the Government is alleging that he and others devised or intended to devise and participate in a scheme or artifice to defraud the citizens of Nye County. The Indictment (#1) states that the scheme was devised by false pretenses, and that the false or fraudulent pretenses used by Richards and others included paying Trummell money to improperly influence her to depart from her faithful and impartial discharge of duties and functions as a County Commissioner. The Indictment (#1) fairly informs Richards the false or fraudulent pretenses that were allegedly used to advance the alleged scheme and artifice to defraud the citizens of Nye County.

The Indictment (#1) also states that the scheme was transmitted via wire through interstate commerce. The Indictment (#1) alleges that on November 10, 2005, and December 13, 2005, interstate wire communications occurred by sound and writing, allegedly furthering the scheme. The Indictment (#1) fairly informs Richards of when, where, and how the alleged scheme was transmitted by wire communication through interstate commerce.

The Court finds that the Indictment (#1) properly contains the elements for wire and honest services fraud under 18 U.S.C. §§ 1343 and 1346. Moreover, the Indictment (#1) is sufficient to allow Richards to plead an acquittal or conviction, under 18 U.S.C. §§ 1343 and 1346, and the Indictment (#1) ensures that Richards will not be placed in double jeopardy.

**2. 18 U.S.C. § 2**

An indictment alleging aiding and abetting, under 18 U.S.C. § 2, "must be accompanied by an indictment for a substantive offense." Echavarria-Olarte v. Reno, 35 F.3d 395, 398 (9th Cir. 1994) (citations omitted). Section 2 provides that: "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal[; and] [w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2. The Ninth Circuit holds that aiding and abetting liability contains four elements:

> (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the

- 5 -

requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.

United States v. Ching Tang Lo, 447 F.3d 1212, 1226 (9th Cir. 2006); see also  United States v. Garcia, 400 F.3d 816, 819 n.2 (9th Cir. 2005).  It is not required that the principal be named or identified in the indictment but only that somebody committed the offense and that the defendant intentionally did an act to help in its commission.  United States v. Lynch, 437 F.3d 902, 915 (9th Cir. 2006) (en banc).

In the present matter, the substantive offense outlined in the Indictment (#1) is wire fraud and the deprivation of honest services.  First, the Indictment (#1) alleges that Richards had specific intent to use Trummell, and other unknown individuals,  in his scheme and artifice to deprive and defraud the citizens of Nye County.   The Indictment (#1) informs Richards that he allegedly had the specific intent to facilitate the commission of the crime.  Second, the Indictment (#1) alleges that Richards had the requisite intent to deprive the citizens of Nye County with honest services when he paid Trummell money to induce her to influence the Commission in passing the revised ordinance that would allow Richards to build a brothel on his Calvada 14 Property.  Third, the Indictment (#1) alleges that Richards assisted and participated in the wire fraud and deprivation of honest services when he telephoned Trummell and when the alleged corrupted ordinance was transmitted via email across interstate commerce.  Lastly, it was alleged in the Indictment (#1) that Richards committed the underlying substantive offense.  See infra.

The Court finds that the Indictment (#1) properly contains the elements for aiding and abetting under 18 U.S.C. § 2.  The Indictment (#1) is sufficient to allow Richards to plead an acquittal or conviction, under 18 U.S.C. § 2, and the Indictment (#1) ensures that Richards will not be placed in double jeopardy.

Richards argues that the Indictment (#1) fails to inform him of the nature and cause of the accusations based on 18 U.S.C. §§ 1343, 1346, and 2.  The Court disagrees.  The indictment must contain only the minimal constitutional standards which are that: "(1) it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend; and (2)

1   it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

2   Hamling, 418 U.S. at 117.   The Court finds that the Indictment (#1) contains the minimal

3   constitutional standards and should not be dismissed for insufficiency.

4   **II.     SUBSTANTIVE AND INCHOATE WIRE FRAUD VIOLATION**

5           United States Code, section 1343 "codifies a 'direct' theory of fraud in which the object of

6   the fraudulent scheme is to obtain money or other tangible property."    United States v. Williams,

7   441 F.3d 716, 720 (9th Cir. 2006).   Prior to 1987, the Ninth Circuit criminalized schemes that

8   deprived others of tangible property rights and intangible rights. Id. at 721.  Throughout "the history

9   of the federal mail and wire fraud statutes," the "intangible rights" theory of fraud is and continues

10  to be controversial in the federal courts.  Id.  In 1987, the Supreme Court limited the scope of the

11  fraud statutes by stating that the these statutes only "protect[] property rights . . .[and not] the

12  intangible right of the citizenry to good government." McNally v. United States, 483 U.S. 350, 356

13  (1987).  To overturn McNally's precedent, Congress quickly enacted 18 U.S.C. § 1346 to include

14  "a scheme or artifice to deprive another of the intangible right of honest services." Section 1346

15  codified an "intangible rights" theory of fraud where "the object of the fraudulent scheme is the

16  victim's intangible right to receive honest services."  Williams, 441 F.3d at 720. Senator Biden,

17  while introducing § 1346 as part of the Anti-Corruption Act of 1988, stated:

18                  Mr. President, I am pleased today to join with my colleagues in
                introducing the Anti-Corruption Act of 1988. . . . This bill . . .
19              reverses the McNally case by creating a new public corruption statute
                that will be used to bring charges against anyone who attempts to
20              deprive the citizens of the United States or of any State of the honest
                services of a public official . . .
21

22  134 Cong. Rec. S12581-04 (daily ed. Sept. 16, 1988) (statement of Sen. Biden) (emphasis added).

23  Furthermore, the Ninth Circuit holds that the "intangible rights" theory of fraud, "as codified by

    § 1346, can apply to private individuals as well as to public figures."  Williams, 441 F.3d at 723.
24
            In the present matter, Richards argues that the Indictment (#1) should be dismissed because
25
    it fails to state a criminal offense under 18 U.S.C. §§ 1343, 1346, and 2.  Moreover, Richards argues
26
    that the Indictment (#1) does not state: (1) a substantive wire fraud violation; or (2) an inchoate wire
27
    fraud violation.   The Court will now decide whether the indictment fails to state a criminal
28

1  substantive or inchoate wire fraud violation.

2  **1. Substantive Wire Fraud Violation**

3  Richards argues that the Indictment (#1) does not state a substantive wire fraud violation,

4  because the allegations of the Indictment (#1) do not provide: (a) that a fiduciary or trust relationship

5  existed between Richards and either the Nye County Commission or its constituency; (b) that

6  Richards violated any state law; (c) that Richards privately gained from the alleged fraud; and (d)

7  that any breach of fiduciary obligation or malfeasance in the exercise of the official duties or

8  discretionary functions of a county commissioner occurred.

9  **(a) Fiduciary or Trust Relationship**

10  Richards argues that, as a matter of law, he cannot be found guilt of a deprivation of honest

11  services fraud, pursuant to 18 U.S.C. §§ 1343, 1346, and 2, because no fiduciary or trust relationship

12  existed between himself and either the Nye County Commission or its constituency.  Moreover,

13  Richards argues that because Trummell was a "government agent," conspiracy to commit honest

14  services mail fraud could not attach because there can be no indictable conspiracy with a government

15  agent who secretly intends to frustrate the conspiracy.  The Court now determines whether the

16  intangible right of honest services applies to Richards.

17  Richards points to Williams to argue that a person may not be convicted for the depravation

18  of honest services if no fiduciary or trust relationship exits between the accused and the defrauded.

19  In Williams, the Ninth Circuit found that the deprivation of honest services may apply to private

20  individuals as well as public figures.  441 F.3d at 723.  However, the Ninth Circuit did not answer

21  the issue of "whether the 'intangible right of honest services' in § 1346 applies to persons who are

22  not fiduciaries." Id.  In Williams, the defendant, hired as a financial advisor and estate planner, used

23  his fiduciary position to convert large sums of money, entrusted to him from his clients, for his own

24  personal use. Id. Id. at 724. Since a fiduciary relationship existed, the Ninth Circuit remained silent

25  on this issue.  The Court now determines whether the depravation of honest services applies to

26  Richards in this specific case.

27  The parties were unable to identify a Ninth Circuit case on this issue. However, United

28  States v. Potter, a case from the First Circuit, gives the Court guidance.  463 F.3d 9 (1st Cir. 2006).

1    In Potter, the First Circuit upheld the convictions of two individuals for conspiring to deprive the

2    public of a public official's honest services in violation of 18 U.S.C. § 1346.  Id.  Defendant Potter

3    was the chief executive officer and Defendant Bucci was a general manager for the company LPRI,

4    LLC (Lincoln Park).  Id. at 13.  Lincoln Park ran gambling facilities in Lincoln, Rhode Island.  Both

5    Potter and Bucci where charged  with forming a scheme to bribe the then-speaker of the Rhode

6    Island House of Representatives, John Harwood.  Id.  Lincoln Park retained Daniel McKinn,

7    Representative Harwood's law partner of the firm of McKinnon & Harwood, for zoning and other

8    matters.  Id.  The scheme consisted of paying McKinnon's law firm large sums of money with the

9    purpose of paying Representative Harwood to shape legislation that would benefit Lincoln Park.  Id.

10

11       Potter is analogous to the case at hand because neither Potter nor Bucci owed a fiduciary duty

12   to the public, and neither Potter nor Bucci conspired with Representative Harwood or his law partner

13   McKinnon in forming or executing the scheme.  Potter and Bucci sent several faxes to each other

14   "arguing about the details of the plan and making quite clear that the payments contemplated were

15   intended to advance Lincoln Park's legislative agenda."  463 F.3d at 14-15.  In attacking the

16   indictment, Potter and Bucci stated that no evidence existed showing that Harwood was a party to

17   the agreement or even knew of the scheme.  Id. at 16.  The First Circuit found that a public official

18   need not be part of a scheme to deprive the public of an elected officials honest services for criminal

19   liability to apply,  and neither the language or the policy of 18 U.S.C. § 1346 mandate this

20   requirement.  Id.  The First Circuit explained that just as Representative Harwood "could not be

21   convicted without proof of his knowing participation . . .under the statute anyone could concoct a

22   scheme to deprive . . . citizen's of Harwood's honest services and could send [a communication by

23   wire] for the purpose of executing such a scheme."  Id. at 16-17.  Moreover, the First Circuit stated:

24

25   Similarly, two persons could conspire to devise the scheme and to use
     [wired communications] for purposes of executing the scheme. That
     Harwood might prove unwilling or unable to perform, or that the

26   scheme never achieved its intended end, would not preclude
     conviction for either the substantive offense (sending the [wired

27   communication]) or forming the conspiracy.

28   Id. at 17.  The Court adopts Potter's reasoning and holding.

1    In the present matter, Richards allegedly conspired with "others known and unknown" to

2    execute the material scheme and artifice to defraud.  It is of no importance whether Richards could

3    or even conspired with Trummell because the Indictment (#1) alleged a conspiracy with other

4    individuals.  In addition, the Indictment (#1) alleges that wire communications through interstate

5    commerce were used in furtherance of the scheme.  Although Trummell may have proved unwilling

6    or unable to perform, it does not preclude Richards from being charged in the Indictment (#1)

7    because it is alleged that Richards and others participated in the scheme.  It is the participation in a

8    scheme or artifice to defraud that 18 U.S.C.  §§ 1343, 1346, and 2 criminalizes.   Here, the

9    Indictment (#1) clearly stated the requisite elements to put Richards on notice.  The Court finds, as

10   applied in this case, a fiduciary relationship need not exist for Richards to be charged under  18

11   U.S.C.  §§ 1343, 1346, and 2.

12                      **(b) State Law Violation**

13   Richards argues that in order to be convicted of honest services fraud pursuant to 18 U.S.C.

14   §§ 1343 and 1346, Trummell's and his actions must violate a Nevada state law, and since the

15   indictment did not allege any violations of Nevada state law, no violation for honest services fraud

16   may exist.  In Nevada, state law criminalizes the conduct of any person, including a public official

17   or employee, for bribing or being bribed.  See Nev. Rev. Stat. §§ 281.350 and 197.020.  Nevada

18   Revised Statute § 281.350 provides that:

19
20              Every public officer or public employee who shall ask or receive,
             directly or indirectly, any compensation, gratuity or reward, or any
             promise thereof, upon any agreement or understanding that he shall
21           act in any particular manner in connection with his official duties or
             the public service; or who, being authorized to purchase or contract
22           for materials, supplies or other articles or to employ servants or labor
             for the state or any county or municipality, or for the public service,
23           shall ask or receive, directly or indirectly, for himself or another, a
             commission, percentage, discount, bonus or promise thereof from any
24           person with whom he may deal in relation to such matters, shall be
             guilty of a gross misdemeanor.
25
     Nevada Revised Statute § 197.020 provides that:
26
27              A person who gives, offers or promises, directly or indirectly, any
             compensation, gratuity or reward to a person executing any of the
             functions of a public officer other than as specified in NRS 197.010;
28           199.010; and 218.590, with the intent to influence him with respect

                                    - 10 -

1         to any act, decision, vote or other proceeding in the exercise of his powers or functions, is guilty of a category C felony and shall be
2         punished as provided in NRS 193.130.

3 Richards proposes that in order to be convicted of honest services fraud, the Indictment (#1) must

4 allege that either his or Trummell's actions violated Nevada Revised Statutes §§ 281.350 and

5 197.020. The Court disagrees. "State law is irrelevant in determining whether a certain course of

6 conduct is violative of the wire fraud statute." United States v. Malone, 2006 WL 2583293, at *3

7 (D. Nev. 2006) (quoting United States v. Louderman, 576 F.2d 1383, 1387 (9th Cir. 1978). The

8 court in Malone found Louderman, a pre-McNally case, persuasive to show that prior to the

9 enactment of 18 U.S.C. § 1346, the law established that it was unnecessary for an indictment to

10 include state law violations in order to charge a person with honest services fraud. Malone, 2006

11 WL 2583293, at *3. The Court agrees with Malone's holding. After reading 18 U.S.C. §§ 1343

12 and 1346, the Court is not persuaded to adopt Richard's position. The Court's reading of 18 U.S.C.

13 §§ 1343 and 1346 makes it clear that state law violations need not be alleged in the indictment for

14 Richards to be charged with honest services fraud. Richard's argument would add an unnecessary

15 element to charge a person with honest services fraud.

16         Lastly, Richards argues that alleging a state law violation in the indictment acts as an

17 important "limiting principle" so that innocent people are not charged with honest services fraud.

18 The Court disagrees. The "limiting principles" in 18 U.S.C. §§ 1343 and 1346 are the intent to

19 defraud and the participation in the scheme. A person who has not intentionally participated in a

20 scheme cannot be charged for honest services fraud. State law violations are not relevant in

21 determining whether a person intentionally participated in a scheme to defraud. Therefore, the Court

22 holds that a person may be charged for honest services fraud pursuant to 18 U.S.C. § 1346, even

23 though no state law violation was alleged in the Indictment (#1).

24                          **(c) Actual Gain Received**

25         The Court is also persuaded by Malone that "personal gain is not an element of honest

26 services wire fraud." Malone, 2006 WL 2583293 at *3. The Malone decision stated that the "intent

27 to defraud" element serves "as a limiting principal to ensure that not every breach of a fiduciary duty

28 [is] punishable as honest services fraud." 2006 WL 2583293 at *4. It is this requirement of specific

1   intent that "prevents every potential 'scheme or artifice to defraud' from becoming a federal crime."

2   Id.  Here, the Indictment (#1) alleges that Richards intended to devise, plan, execute, and attempted

3   to execute, "a scheme and artifice to deprive and defraud the citizens of Nye County, Nevada, of the

4   intangible right to the honest services of their elected public officials."  The requisite "specific

5   intent" element for honest services fraud is was outlined in the indictment; therefore, a "limiting

6   principle" was satisfied to charge Richards with wire and honest services fraud.  The Court finds that

7   actual gain is not a requisite element for wire and honest services fraud. Therefore, the Indictment

8   (#1) does not fail on its face.

9                              **(d) Trummell's Actions**

10          Lastly, Richards argues that the Indictment (#1) does not state a substantive wire fraud

11   violation because Trummell did not misuse her position while sitting as an active county

12   commissioner.  Richards argues that Trummell was hired by Richards as a freelance legal assistant

13   and political consultant.  Moreover, Trummell's duties while employed with Richards had nothing

14   to do with the exercise of her official duties or the discretionary functions of her public office.  The

15   Government argues that it should be up to the trier of fact to answer the question of whether

16   Trummell acted in her private capacity.  The Court agrees.  Whether Trummell acted as a private

17   consultant or within her capacity as a public officer, is an issue better left for the jury to decide.

18   Because allegations stated in the indictment must be assumed to be true, the Court must assume that

19   Richards allegedly intended to defraud the citizens of Nye County of the honest services of their

20   public official when Richards and others allegedly devised, planned, and executed the scheme.

21   United States v. Bohonus, 628 F.2d 1167 (9th Cir. 1980).

22          The Court concludes that the Indictment (#1) states  a substantive wire fraud violation and

23   does not fail on its face.  Honest services wire fraud consists of a scheme or artifice to defraud, the

24   intent to defraud, and the transmission of wired communications in interstate commerce to carry out

25   or to attempt to carry out the scheme or plan.  18 U.S.C. §§ 1343 and 1346.  The Indictment (#1)

26   states these requisite elements for the substantive wire fraud violation.

27          **2.  Inchoate Wire Fraud Violation**

28          Richards argues that the Indictment (#1) does not state an inchoate wire fraud violation,

1   because: (a) liability for aiding and abetting under 18 U.S.C. § 2, is conditioned on the commission

2   of a substantive criminal offense by someone; and (b) Trummell committed no substantive criminal

3   offense.

4                          **(a) Aiding and Abetting Liability**

5        The Ninth Circuit states that "aiding and abetting is embedded in every federal indictment

6   for a substantive crime." <u>United States v. Garcia</u>, 400 F.3d 816, 820 (9th Cir. 2005). For aiding and

7   abetting liability to apply, the government must prove four elements:

8

9                (1) that the accused had the specific intent to facilitate the
             commission of a crime by another[;] (2) that the accused had the
             requisite intent of the underlying substantive offense[;] (3) that the
10            accused assisted or participated in the commission of the underlying
             substantive offense[;] and (4) that someone committed the underlying
11           substantive offense.

12  <u>Id.</u> at 819 n.2.  Richards argues that aiding and abetting liability cannot apply because no one

13  committed the underlying substantive offense.

14       The underlying substantive offense is forming a fraudulent scheme to deprive another of the

15  intangible right of honest services; and the interstate transmission of the scheme by wire.  The

16  Indictment (#1) charges Richards with fraud by wire and depravation of honest services.  As

17  discussed <u>supra</u>, for a person to be convicted of wire fraud and honest services fraud the person must

18  first devise or intend to devise a scheme or artifice to defraud.  The Indictment (#1) alleges that

19  Richards formed the scheme with known and unknown persons.  It is not necessary for an indictment

20  to state all those involved in the scheme or artifice to defraud.  <u>Feldstein v. United States</u>, 429 F.2d

21  1092, 1095 (9th Cir. 1970).  Second, the Indictment (#1) alleges that Richards acted with intent to

22  deprive the citizens of Nye County of its right to the honest services of its county commissioner.

23  Lastly, the Indictment alleges that the underlying substantive offense occurred when a telephone call

24  was made on November 10, 2005, between Trummell, in Washington, D.C., and Richards in Nye

25  County, Nevada, and when an email communication was transmitted in furtherance of the "scheme"

26  on December 13, 2005.  The Indictment (#1), although it does not state all the individuals who

27  allegedly participated in the honest services fraud scheme, does state that a wire and honest services

28  fraud violation occurred.  The Court finds that the Indictment (#1) states a sufficient inchoate wire

1    fraud violation.

2              **(b) No Substantive Criminal Offense**

3              Richards next argues that because Trummell did not commit a substantive criminal offense,

4    he cannot be charged with honest services fraud or fraud by wire.  Richards points to <u>United States</u>

5    <u>v. Lo</u>, to argue that "the agreement in a conspiracy cannot be established with evidence that the

6    defendant had an agreement with a government informer."  447 F.3d at 1225.  It is alleged that

7    Trummell acted as a "cooperating witness" or government agent and, therefore, could not and did

8    not commit a substantive criminal offense.  This is true. However, the Indictment (#1) does not

9    allege that Richards conspired with Trummell.  It alleges that he and others, whose object was to

10   conceal their true identities, conspired and participated in the scheme.  Further, the Indictment (#1)

11   alleges that Richards participated in the underlying substantive offense.

12             Trummell's actions are inconsequential because it is the participation in a scheme to deprive

13   the citizens of Nye County of their honest services and the communication of the scheme by wire

14   through interstate commerce that is at issue.  Two individuals may conspire together. The Indictment

15   (#1) alleges Richards and others known and unknown conspired, and with that purpose one or both

16   could communicate with others using wire communications in furtherance of the scheme.  The

17   argument that Trummell was a government agent, or that she was unable perform, or even that the

18   scheme never achieved it intended purpose, does not preclude a conviction for either the substantive

19   offense (making the telephone call and transmission of the email) or forming the conspiracy.  <u>Potter</u>,

20   463 F.3d at 17.

21             The Court finds that the Indictment (#1) does not fail to state an inchoate wire fraud violation

22   because it is alleged that a substantive criminal offense was committed and because Trummell's

23   actions are inconsequential to Richards' charges.

24   **III. UNCONSTITUTIONALITY OF 18 U.S.C. §§ 1343, 1346, AND 2**

25             Richards argues that 18 U.S.C. §§ 1343, 1346, and 2, are unconstitutionally vague and

26   overbroad.  A party may challenge a statute for vagueness either by arguing that the statute is vague

27   on its face or vague as applied in the case.  When examining a statute for vagueness, it must be

28   determined "whether a person of average intelligence would reasonably understand that the charged

1   conduct is prescribed . . . [and] [t]he statute must be examined in the light of the facts of the case at

2   hand." Williams, 441 F.3d at 724 (quotations omitted).  Here, Richards challenges 18 U.S.C. §§

3   1343, 1346, and 2, as unconstitutionally vague and overbroad as applied in his case.

4          The Court now examines 18 U.S.C. §§ 1343, 1346, and 2 "in the light of the facts of the case

5   at hand." Williams, 441 F.3d at 724.  Richards argues that 18 U.S.C. §§ 1343, 1346, and 2 are

6   unconstitutionally vague as applied to his case because no person of average intelligence would

7   reasonably understand that a private citizen who owes no fiduciary duty to the citizens of Nye

8   County could be convicted of mail and honest services fraud when no state law violation was alleged

9   in the Indictment (#1), and where the public official was actually a government informer.  Moreover,

10  Richards argues that charging him with honest services fraud amounts to a radical departure from

11  the pre-existing case law.   The Court disagrees.

12         The wire and honest service fraud statutes, prior to McNally and after the enactment of 18

13  U.S.C. § 1346, criminalized behavior where a scheme was formed with the intent to defraud another

14  of the intangible right of honest services, where a person participated in the scheme, and where the

15  scheme was furthered by the use of interstate commerce.  A simple reading of 18 U.S.C. §§ 1343,

16  1346, and 2 indicates that any person with the intent to defraud, who forms a scheme to deprive

17  another of the intangible right of honest services and in furtherance of the scheme uses interstate

18  commerce, may be charged with wire and honest services fraud.  Richards argument that the statute

19  is vague and overbroad is without merit.  A person of average intelligence understands that forming

20  and furthering a scheme with others to defraud the citizens of Nye County of their public officials'

21  honest services by the use of interstate commerce amounts to a crime. Therefore, 18 U.S.C. §§ 1343,

22  1346, and 2 are not unconstitutionally vague and overbroad as applied in this case.

23         "A law is overbroad if it prohibits not only acts the legislature may forbid, but also

24  constitutionally protected conduct." Schwartzmiller v. Gardner, 752 F.2d 1341, 1346 (9th Cir.

25  1984).  For Richards to prevail with his argument that 18 U.S.C. §§ 1343, 1346, and 2 is overbroad,

26  he must show that his conduct was constitutionally protected.  Richards argues that these statutes are

27  overbroad because it charges him, a private citizen,  who owes no fiduciary duty to citizens of Nye

28  County, with honest services fraud.  As discussed supra, even though Richards is a private citizen,

1   Trummell was a cooperating witness, and no state law violations were indicated in the Indictment

2   (#1), Richards may still be charged with honest services fraud.  It was Congress' intent to criminalize

3   anyone intentionally depriving a citizen of the honest services of their public officials through

4   bribery.  134 Cong. Rec. S12581-04 (daily ed. Sept. 16, 1988) (statement of Sen. Biden).  The Court

5   finds that 18 U.S.C. §§ 1343, 1346, and 2 are not overbroad as applied to this case, because these

6   statutes do not criminalize constitutional behavior.

7          The Court concludes that  18 U.S.C. §§ 1343, 1346, and 2 are not unconstitutionally vague

8   or overbroad as applied in this case because a person of average intelligence would reasonably

9   understand that these statutes criminalize the alleged behavior Richards engaged in, and the alleged

10   behavior was not constitutionally protected.

11                                         **CONCLUSION**

12          The Court finds that the Indictment (#1) sufficiently informs Richards of the charge

13   against him, and it enables him to plead an acquittal or conviction in bar of future prosecutions

14   for the same offense.  Furthermore, the Court finds that he Indictment (#1) did not fail to state a

15   substantive or inchoate wire and honest services fraud criminal offense under 18 U.S.C. §§ 1343,

16   1346, and 2.  Lastly, the Court does not find 18 U.S.C. §§ 1343, 1346, and 2 to be

17   unconstitutionally vague or overbroad as applied to this case.

18                                       **RECOMMENDATION**

19          Based on the foregoing and good cause appearing therefore,

20          IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the

21   Defendant's Motion to Dismiss Indictment (#38) be **DENIED**.

22

23                                            **NOTICE**

24          Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation**

25   **must be in writing and filed with the Clerk of the Court on or before February 11, 2009.**

26   The Supreme Court has held that the courts of appeal may determine that an appeal has been

27   waived due to the failure to file objections within the specified time.  Thomas v. Arn, 474 U.S.

28   140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified

1   time and (2) failure to properly address and brief the objectionable issues waives the right to

2   appeal the District Court's order and/or appeal factual issues from the order of the District Court.

3   Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist.,

4   708 F.2d 452, 454 (9th Cir. 1983).

5          DATED this __26th__ day of January, 2009.

6

7

8   _____
    ROBERT J. JOHNSTON
9   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28